# U.S. District Court
## District of Maryland (Baltimore)
## CRIMINAL DOCKET FOR CASE #: <u>1:22–mj–03247–MJM</u>–1

Case title: USA v. Kamon                                              Date Filed: 11/07/2022

Other court case number:  Unknown U.S. District Court–Central
                                                District of California

---

Assigned to: Magistrate Judge
Matthew James Maddox

**<u>Defendant (1)</u>**

| | | |
|---|---|---|
| **Christopher K Kamon** | represented by | **Donald Paul Salzman** |
| | | Skadden Arps Slate Meagher and Flom LLP |
| | | 1440 New York Ave NW |
| | | Washington, DC 20005 |
| | | 12023717983 |
| | | Fax: 12023955760 |
| | | Email: donald.salzman@probonolaw.com |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Jessie K. Liu** |
| | | Skadden, Arps, Slate Meagher & Flom |
| | | 1440 New York Avenue, NW |
| | | Washington, DC 20005 |
| | | 202–371–7000 |
| | | Fax: 202–661–2340 |
| | | Email: jessie.liu@skadden.com |
| | | *PRO HAC VICE* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: Retained* |

| **<u>Pending Counts</u>** | **<u>Disposition</u>** |
|---|---|
| None | |

| **<u>Highest Offense Level (Opening)</u>** | |
|---|---|
| None | |

| **<u>Terminated Counts</u>** | **<u>Disposition</u>** |
|---|---|
| None | |

**<u>Highest Offense Level
(Terminated)</u>**

None

**Complaints**                                    **Disposition**

18 U.S.C. Sec. 1343 Wire Fraud

**Plaintiff**

**USA**
Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 11/07/2022 | 1 | | COMPLAINT as to Christopher K Kamon (1).(Attachment: # 1 Affidavit In Support of Criminal Complaint) (td4s, Deputy Clerk). (Entered: 11/07/2022) |
| 11/07/2022 | 3 | | Initial Appearance in Rule 5(c)(3) Proceedings as to Christopher K Kamon held on 11/7/2022 before Magistrate Judge Matthew James Maddox.(FTR Gold, CRD: Caitlyn Wilson, CTRM: 7B) (cw6s, Deputy Clerk) (Entered: 11/07/2022) |
| 11/07/2022 | 4 | | ORDER OF TEMPORARY DETENTION as to Christopher K Kamon. Detention Hearing set for 11/10/2022 11:30 AM in Courtroom 7B, 101 West Lombard Street, Baltimore, Maryland 21201, before Magistrate Judge Matthew James Maddox.. Signed by Magistrate Judge Matthew James Maddox on 11/7/2022. (cw6s, Deputy Clerk) (Entered: 11/07/2022) |
| 11/07/2022 | 6 | | ORDER pursuant to Fed R Crim P 5(f) and the Due Process Protections Act as to Christopher K Kamon. Signed by Magistrate Judge Matthew James Maddox on 11/7/2022. (cw6s, Deputy Clerk) (Entered: 11/07/2022) |
| 11/07/2022 | 7 | | WAIVER of Rule 5(c)(3) Hearing by Christopher K Kamon(cw6s, Deputy Clerk) (Entered: 11/07/2022) |
| 11/08/2022 | 8 | | MOTION to Appear Pro Hac Vice for Jessie K. Liu *as counsel for Christopher K. Kamon.* (Filing fee $100, receipt number AMDDC–10260690.). (Salzman, Donald) (Entered: 11/08/2022) |
| 11/09/2022 | 9 | | ORDER granting 8 Motion to Appear Pro Hac Vice on behalf of Jessie K. Liu. Directing attorney Jessie K. Liu to register for pro hac vice filing in the District of Maryland through PACER at https://pacer.uscourts.gov/ if attorney has not already done so. The *Pro Hac Vice* option must be selected when registering as to Christopher K Kamon (1). Signed by Clerk on 11/9/2022. (mh4s, Deputy Clerk) (Entered: 11/09/2022) |
| 11/10/2022 | | | PAPERLESS NOTICE OF HEARING by U.S. Attorney's Office as to Christopher K Kamon. PLEASE NOTE: Defendant is in custody. A writ has not been requested. A come up was requested on 11/10/2022. An interpreter will not be needed. Detention Hearing set for 11/10/2022 11:30 AM in Courtroom 7B, 101 West Lombard Street, Baltimore, Maryland 21201, before Magistrate Judge Matthew James Maddox.(McGuinn, Colleen) (Entered: 11/10/2022) |
| 11/10/2022 | 10 | | Detention Hearing as to Christopher K Kamon held on 11/10/2022 before Magistrate Judge Matthew James Maddox.(FTR Gold; Telita Davis, Courtroom |

| | | | |
|---|---|---|---|
| | | | 7B.) (td4s, Deputy Clerk) (Entered: 11/10/2022) |
| 11/10/2022 | 11 | | ORDER OF DETENTION as to Christopher K Kamon.. Signed by Magistrate Judge Matthew James Maddox on 11/10/2022. (td4s, Deputy Clerk) (Entered: 11/11/2022) |
| 11/10/2022 | 12 | | COMMITMENT TO ANOTHER DISTRICT as to Christopher K Kamon. Defendant committed to District of Central District of California.. Signed by Magistrate Judge Matthew James Maddox on 11/10/2022. (td4s, Deputy Clerk) (Entered: 11/11/2022) |

AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)     ☐ Original     ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

☑ ___ FILED     ___ ENTERED
___ LOGGED     ____ RECEIVED

**2:10 pm, Nov 07 2022**

AT  BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy

| | |
|---|---|
| United States of America | |
| v. | |
| CHRISTOPHER K. KAMON, | Case No. |
| Defendant | |

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of September 16, 2020 in the county of Los Angeles in the Central District of California, the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1343 | Wire Fraud |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
*Complainant's signature*

ELIAS GUERRERO, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:     November 5, 2022

_____
*Judge's signature*

City and state:   Los Angeles, California

Hon. MICHAEL WILNER, U.S. Magistrate Judge
*Printed name and title*

AUSA: Ali Moghaddas

4

**AFFIDAVIT**

I, Elias Guerrero, being duly sworn, declare and state as follows:

## I.   PURPOSE OF AFFIDAVIT

1.   This affidavit is made in support of a criminal complaint against, and arrest warrant for, CHRISTOPHER K. KAMON, ("KAMON"), DOB 10/02/1973, for wire fraud in violation of Title 18, United States Code, Section 1343.

2.   The facts set forth in this affidavit are based upon documents obtained during the course of the investigation, public records, my personal observations, my training and experience, and information obtained from other agents, including agents with the Internal Revenue Service-Criminal Investigation, and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

## II.   BACKGROUND OF SPECIAL AGENT GUERRERO

3.   I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since March 2019.  I am currently assigned to a Los Angeles Field Division White Collar Crimes Squad, which is responsible for investigating complex financial crimes.

1

4.    Since becoming an FBI Special Agent in 2019, I have received 20 weeks of formal training at the FBI Training Academy in Quantico, Virginia.  During the time I have been employed by the FBI, I have participated in numerous investigations relating to wire fraud, mail fraud, and various types of complex financial crimes.  I have participated in many aspects of criminal investigations, including reviewing evidence, analyzing financial documents, conducting physical and electronic surveillance, working with informants, and executing search and arrest warrants.

### III.  <u>SUMMARY OF PROBABLE CAUSE</u>

5.    Over the course of several years, KAMON, who was previously the Controller and Chief Financial Officer ("CFO") of the now-defunct law firm, Girardi/Keese ("GK"), funneled millions of dollars from the law firm's operating accounts to bank accounts that he or his co-schemers controlled.

6.    Unbeknownst to GK's principals, including now-disbarred attorney Thomas V. Girardi ("Girardi"),[1] it is estimated that between at least 2017 and 2020 (the year GK was forced into involuntary bankruptcy), KAMON caused over $8

---

[1] Ironically, it appears that KAMON was misappropriating monies from GK at the same time as Girardi and other GK principals, including KAMON, are suspected of separately misappropriating monies from client trust accounts.  <u>See generally</u>, <u>In Re Lion Air Flight JT 610 Crash</u>, 1:18-CV-07686 (N.D. Ill.), CR 1450 (Memorandum Opinion and Order, Hon. Thomas M. Durkin).  The scope of this criminal complaint is limited to KAMON's separate scheme to defraud GK by fraudulently obtaining money from GK's operating accounts, which, as described above, were almost exclusively funded with money from GK's client trust accounts.

million to be drained, using interstate wirings, from GK's operating accounts for his own personal uses, including by falsely representing and maintaining the pretense that the money was being paid to GK's vendors when it was actually being used to pay for the extensive remodeling of his personal properties, the purchase of exotic sports cars, extravagant travel around the world, and escorts.  Additionally, KAMON also directed GK funds to his co-schemers, who in turn provided KAMON with millions of dollars in cash kickbacks while keeping a small fee for themselves.

### IV.   <u>STATEMENT OF PROBABLE CAUSE</u>

7.    Based on my review of documents obtained during the course of the investigation, public records, law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

8.    Before its downfall, GK was one of the most prominent plaintiff's law firms in the country, boasting staggering settlements and trial verdicts.  According to bank records that I have reviewed, at its peak, GK was receiving hundreds of millions of dollars in any given year.  According to interviews with former GK employees, KAMON was known as the CFO of GK until December 2020 when GK was forced into involuntary bankruptcy.[2]

9.    As CFO, KAMON had specific knowledge of GK's financial affairs and supervised the accounting department.  KAMON also prepared checks on behalf of GK, including client trust account

---

[2] KAMON also listed his occupation as "Controller" of GK on his own loan applications.

checks and those that were used to pay the firm's expenses, such as payroll, rents, and other day-to-day expenditures. Based on information obtained from the Internal Revenue Service ("IRS"), I understand that KAMON's annual salary was approximately $350,000 per year.

10. According to bank records that I have reviewed, KAMON had signatory authority over several GK operating accounts including a Torrey Pines Bank account ending in 9821 ("Account 9821") and a Nano Banc account ending in 0096 ("Account 0096").

11. Girardi's former secretary stated in an interview that KAMON would inform her when the GK operating accounts were low. The secretary would alert Girardi and Girardi would direct KAMON to transfer money from the client trust (IOLTA) accounts, which was funded by client settlements, to replenish the operating accounts.

12. Based on my review of bank records and interviews of several witnesses, and as described in more detail below, KAMON used the GK operating accounts, Accounts 9821 and 0096 (as well as other GK accounts), to misappropriate funds and to enrich himself and his co-schemers. KAMON's primary method of embezzling GK funds included writing checks from GK's operating accounts, including Accounts 9821 and 0096, to purported "vendors" or individuals that he disguised as "legal marketers" for GK. One such co-schemer was Isidro Bravo ("Bravo").

A.   **Over $5.6 Million Funneled from GK Accounts to Bravo's Construction**

13.   From at least 2015 until 2020, KAMON caused over $5.6 million to be sent from Accounts 9821 and 0096 to accounts controlled by Bravo, including a Nikkei Credit Union account ending in 3989 ("Account 3989") in the name of "Bravo's Construction."  The signature card for Account 3989, which I have reviewed, shows Bravo as the sole signatory for the account.

14.   On or about July 9, 2022, Bravo was interviewed by federal investigators and said the following:

a.   He started working at GK in or around 2015 as a handyman completing odd jobs.  Soon thereafter, he was introduced to KAMON.  KAMON recruited Bravo to help him defraud GK by instructing Bravo to cash checks drawn on GK accounts controlled by KAMON and written to Bravo, through Bravo's Construction.  Bravo would then deposit the checks and return a portion of the cash to KAMON.

b.   As an additional part of the scheme, KAMON instructed Bravo to complete construction projects at KAMON's personal residences for which KAMON paid Bravo with GK checks.

15.   Based on my review of bank records, including records from Account 3989, Bravo was paid approximately $5,648,418.35 between at least 2015 and 2020.  These transactions consisted of hundreds of GK checks drawn from Accounts 9821 and 0096, including check #11625 for $4,885.67 drawn from Account 0096 on or about September 16, 2020.  Based on my conversation with the

Vice President of Nikkei Credit Union, I know that by writing check #11625, KAMON caused an interstate wiring from the GK account in Los Angeles out of which the funds were transferred to Bravo's account upon Bravo's deposit of the check.

16.  Based on my review of records for Account 3989, soon after Bravo deposited many of the foregoing GK checks, Bravo made cash withdrawals for either the entirety or majority of the sums deposited.

17.  In order to execute and conceal the foregoing fraudulent transfers, payments to Bravo were disguised as payments to "Bravo's Construction" to suggest that the large sums of monies being transferred were related to construction work when, in reality, KAMON was using Bravo to embezzle funds from GK's accounts, including funds used to pay for Bravo's work on KAMON's own, personal properties.  In fact, my review of records for Account 3989 did not reveal any of the typical expenses one would expect to find for a construction company (especially a construction company doing the volume of business that would generate the millions of dollars Bravo's Construction received), such as building materials or construction equipment.

18.  According to GK records, Bravo's Construction was listed as a purported "vendor" in accounting related documents, and KAMON, as GK's CFO, even caused GK to issue false 1099 tax forms to Bravo's Construction from 2015 until 2019.  Indeed, IRS records show that Bravo's Construction received 1099 forms from

GK for approximately $59,250 in 2015; $118,500 in 2016; $553,053 in 2017; $301,271 in 2018; and $251,814 in 2019.[3]

> ### B. KAMON Funneled an Additional $4 Million from GK Accounts to Other "Independent Contractors" Working for KAMON

19. My review of GK's bank records revealed other accounting oddities similar to KAMON's fraudulent transfers to Bravo's Construction. For example, during the same time period, at least four other construction-related individuals received approximately $4 million from GK in the same manner as Bravo's Construction.

20. For example, based on my review of bank records, approximately $1,226,095 was transferred from GK accounts to Paulo Arrazola ("Arrazola") between at least 2017 and 2020. These transactions consisted of approximately 106 GK checks drawn from Accounts 9821 and 0096.

21. On or about July 27, 2022, Arrazola was interviewed by federal investigators. According to Arrazola, he met KAMON while doing work at GK. Thereafter, he completed significant construction work at KAMON's personal residences, including a 13-month renovation of one of KAMON's properties in Encino, California. At another of KAMON's properties, located in Palos Verdes, California, Arrazola completely rebuilt the home's

---

[3] Based on my review of GK's bank records, and Bravo's bank records, including Account 3989, I know Bravo received significantly more money from GK than declared on the foregoing 1099 tax forms.

plumbing system.  For all of the work that Arrazola completed at KAMON's personal residences, he was paid with GK checks.

22.  Notwithstanding the 106 checks that Arrazola received from GK between 2017 and 2020, Arrazola told federal investigators that he had not completed any work on GK's office since 2016 or possibly 2017.  To conceal the extensive payments from GK accounts to Arrazola, he too was disguised as a GK vendor, "P.A. Electrical (and Plumbing)," on internal GK accounting records.  And like Bravo's Construction, based on information obtained from the IRS, Arrazola received 1099 forms from GK for 2015-2019 for approximately $827,225 in 2015; $504,789 in 2016; $445,873 in 2017; $544,595 in 2018; and $230,692 in 2019, even though Arrazola did not complete any work for GK after 2016/2017.

23.  Based on my review of GK's bank records, in addition to kickback cash transactions and extensive construction projects on his personal properties, KAMON also used the GK accounts to pay other significant personal expenses, including shopping, travel, and female escorts.

## C.   **KAMON Pays $20,000 Monthly Allowance to Female Escort from GK Accounts**

24.  GK's bank records also reveal significant transfers to an entity named Nikita Management, Inc., which, as discussed below, is registered to a woman named Nicole Rokita ("Rokita").

25.  On or about September 30, 2022, Rokita was interviewed by federal investigators.  According to Rokita, she met KAMON around 2017 through an online dating website,

Seekingarrangements.com, which connects affluent older men with younger women.  Rokita stated that KAMON spent hundreds of thousands of dollars buying her jewelry, clothing, and even a Tesla sports car.  KAMON also took Rokita on lavish trips around the world including on private jets and often charged the trips to his GK American Express ("AMEX") card.[4]

26.  According to Rokita, as part of their arrangement, KAMON paid her an allowance of $20,000 per month.  To facilitate these payments, KAMON directed Rokita to form an entity, Nikita Management, Inc.  Records from the California Secretary of State show that Rokita did in fact form this entity in or around April 2017.  Thereafter, KAMON directed Rokita to open a bank account in the company's name.  Accordingly, Rokita opened a Bank of America account in the name of "Nikita Management, Inc."

27.  Based on my review of bank records, beginning in at least June 2017 and continuing through October 2018, KAMON caused approximately 19 transfers, ranging between $10,000 and $20,000 each, to be made from GK Account 9821 to Rokita's Bank of America account, totaling over $360,000.

28.  Regarding these payments and other monies KAMON was providing Rokita from GK, Rokita stated that KAMON told her that he had listed her as a "legal marketer" that referred cases to GK.  According to Rokita, KAMON also arranged for Rokita to

---

[4] According to Rokita, when asked how KAMON could charge extensive personal expenses on GK's AMEX, KAMON claimed that because he could not be a partner at GK, but did so much work for the firm, Girardi allowed him to use the GK AMEX on personal expenses.

obtain health insurance coverage through GK despite the fact that she lacked any bona fide employment status with GK.

29.  According to Rokita, in or around 2020, after news about GK's embezzlement of client funds broke, KAMON told her that she would need to find alternative insurance since he thought GK was going to shut down.  Sometime after that, KAMON told Rokita that he thought he may be implicated in the GK scheme and that he was going to leave the country.  KAMON told Rokita that he was going to change his name and hide from authorities in connection with whatever federal case might be brought.  Rokita also stated that KAMON had investigated the residency process for other countries, and that he was interested in The Bahamas because they would grant permanent residency with the purchase of an expensive property.

**D.   KAMON Purchases $2.4 Million Beach Property in The Bahamas and Fails to Board His Return Flight to the U.S.**

30.  Based upon my review of records, including multiple bank records, I understand that KAMON has wired over $2,255,000 to The Bahamas from his domestic bank accounts in the last several months.

31.  According to Rokita, after federal investigators initially attempted to contact her in or around August 2022, she alerted KAMON and told him FBI agents had come to her house. Flight records reveal that KAMON booked a roundtrip flight from Los Angeles to The Bahamas from September 21, 2022 until September 22, 2022.  However, KAMON never boarded his return flight and I believe he has been in The Bahamas ever since.

10

32.   Based on my review of real estate and open source records, and witness interviews, I understand that KAMON has since purchased a $2.4 million home in New Providence, Bahamas. The sale was finalized on October 13, 2022.

**V.   <u>CONCLUSION</u>**

33.   For all the reasons described above, there is probable cause to believe that KAMON has committed wire fraud, in violation of 18 U.S.C. Section 1343, on or about September 16, 2020, by causing an interstate wire in furtherance of the scheme to defraud described above.

_____
Elias Guerrero, Special Agent,
Federal Bureau of
Investigation

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 5th day of
November, 2022.

_____
HONORABLE MICHAEL WILNER
UNITED STATES MAGISTRATE JUDGE

11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**UNITED STATES OF AMERICA**

                      *

       **vs.**                     **Case No.**  22-mj-03247-MJM-1

                      *

Christopher K. Kamon

                      *

                   ******

## ORDER OF TEMPORARY DETENTION PENDING HEARING
## PURSUANT TO BAIL REFORM ACT

Upon motion of the United States for Temporary Detention, it is ORDERED that a detention

hearing is set for _____ November 10, 2022 _____ *(date)* at ___11:30am_____ *(time)* before

The Honorable Judge **Matthew J. Maddox** _____, United States Magistrate Judge, 101

West Lombard Street, Baltimore, Maryland 21201 Courtroom _____7B_____.

Pending this hearing, the defendant shall be held in custody by (the United States Marshal)

(_____Defendant to be held at CDF_____) (Other Custodial Official) and produced for the hearing.

November 7, 2022
Date

Matthew J. Maddox
United States Magistrate Judge

U.S. District Court (4/2000) Criminal Magistrate Forms: Order Temp. Detention

16

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**UNITED STATES OF AMERICA**

**v.**                                          **Criminal No. 22-mj-03247-MJM-1**

**Defendant.   Christopher K. Kamon**

### ORDER PURSUANT TO Fed R. Crim. P. 5(f)

As amended on October 21, 2020, Federal Rule of Criminal Procedure 5(f) and the Due Process Protections Act, Pub. L. No 116–182, 134 Stat. 894 (Oct. 21, 2020) require that:

"In all criminal proceedings, on the first scheduled court date when both prosecutor and defense counsel are present, the judge shall issue an oral and written order to prosecution and defense counsel that confirms the disclosure obligation of the prosecutor under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and the possible consequences of violating such an order under applicable law."

Accordingly, the Court ORDERS the United States to adhere to the disclosure obligations set forth in *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny. *Brady v. Maryland* instructs that "the suppression by the prosecution of evidence favorable to an accused" violates due process where the evidence is "material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. Failure to adhere to this requirement in a timely manner may result in serious consequences, including, but not limited to, exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, vacating a conviction, or disciplinary action against the prosecution.

Having given counsel the oral admonition required by the Due Process Protections Act, the United States is ordered to produce in a timely manner all exculpatory evidence to the defendant pursuant to *Brady v. Maryland* and its progeny. Not doing so may result in the imposition of the sanctions referenced in this Order.

It is SO ORDERED.

Date: November 7, 2022

Matthew J. Maddox
United States Magistrate Judge

AO 466A (Rev. 12/09; MD 02/10) Waiver of Rule 5 & 5.1 Hearings (Complaint or Indictment)

# UNITED STATES DISTRICT COURT

for the
District of Maryland

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No. 22-mj-03247-MJM-1 |
| Christopher K. Kamon | ) |
| *Defendant* | ) Charging District's Case No. Other Case No. |
| | ) |

## WAIVER OF RULE 5 & 5.1 HEARINGS
### (Complaint or Indictment)

I understand that I have been charged in another district, the *(name of other court)*

I have been informed of the charges and of my rights to:

(1)     retain counsel or request the assignment of counsel if I am unable to retain counsel;

(2)     an identity hearing to determine whether I am the person named in the charges;

(3)     production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;

(4)     a preliminary hearing within 14 days of my first appearance if I am in custody and 21 days otherwise
— unless I am indicted — to determine whether there is probable cause to believe that an offense has
been committed;

(5)     a hearing on any motion by the government for detention;

(6)     request transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my right(s) to:

☑        an identity hearing and production of the warrant.

☑        a preliminary hearing.

☐        a detention hearing.

☐        an identity hearing, production of the warrant, and any preliminary or detention hearing to which I may
be entitled in this district.  I request that those hearings be held in the prosecuting district, at a time set
that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are
pending against me.

Date:        November 7, 2022

*Defendant's signature*

*Signature of defendant's attorney*

Jessie K. Liu

*Printed name of defendant's attorney*

18

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

United States of America,                    *

                                             *

    v.                   *          Case No. 1:22-03247-m-001

Christopher K. Kamon                         *

    Defendant.               *

## MOTION FOR ADMISSION PRO HAC VICE

I, Donald P. Salzman , am a member in good standing of the bar of this

Court. I am moving the admission of Jessie K. Liu

to appear pro hac vice in this case as counsel for Christopher K. Kamon .

We certify that:

1. The proposed admittee is a member in good standing of the bars of the following
State Courts and/or United States Courts:

| State Court & Date of Admission | U.S. Court & Date of Admission |
|---|---|
| Texas - 11/13/1998 | District of Columbia District Court - 2012 |
| Illinois - 05/30/2000 | Supreme 2002; Second Cir. Court of App. - 2014 Court of App. 2000; Tenth Cir. Court of App. 2008 |
| DC - 07/09/2001 | Fourth Cir. Court of App. - 2008; Seventh Cir. |
| Virginia - 10/20/2010 | DC Cir. Court of App. - 2003; US Court of App for Federal Cir. 2009 |

2. The proposed admittee has never been disbarred, suspended, or denied admission to
practice law in any jurisdiction. (NOTE: If the proposed admittee has been
disbarred, suspended, or denied admission to practice law in any jurisdiction, then
he/she must submit a statement fully explaining all relevant facts.)

3. The proposed admittee is familiar with the Maryland Attorneys' Rules of Professional
Conduct, the Federal Rules of Criminal Procedure, the Federal Rules of Evidence, the
Federal Rules of Appellate Procedure, and the Local Rules of this Court, and
understands he/she shall be subject to the disciplinary jurisdiction of this Court.

4. The proposed admittee understands admission pro hac vice is for this case only and
does not constitute formal admission to the bar of this Court.

5.  Either the undersigned movant or _____,
    is also a member of the bar of this Court in good standing, and will serve as co-counsel in these proceedings.

6.  **The $100.00 fee for admission pro hac vice accompanies this motion.**

7.  We hereby certify under penalties of perjury that the foregoing statements are true and correct.

MOVANT

Signature

Donald P. Salzman - MD 16501
_____
Printed name and bar number

SASM&F LLP
_____
Office name

1440 New York Avenue N.W., Washington, DC 20005
_____
Address

donald.salzman@skadden.com
_____
Email Address

202.371.7983
_____
Telephone number

202.661.9063
_____
Fax Number

PROPOSED ADMITTEE

Signature

Jessie K. Liu, DC 472845
_____
Printed name and bar number

SASM&F LLP
_____
Office name

1440 New York Avenue N.W., Washington, DC 20005
_____
Address

jessie.liu@skadden.com
_____
Email Address

202.371.7340
_____
Telephone number

202.661.2340
_____
Fax Number

```
MIME-Version:1.0
From:MDD_CM-ECF_Filing@mdd.uscourts.gov
To:MDDdb_ECF@mdd.uscourts.gov
Bcc:
--Case Participants: Jessie K. Liu (jessie.liu@skadden.com), Donald Paul Salzman
(dlmlcwas@skadden.com, donald.salzman@probonolaw.com), Magistrate Judge Matthew James
Maddox (mdd_mjmchambers@mdd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:11071012@mdd.uscourts.gov
Subject:Activity in Case 1:22-mj-03247-MJM USA v. Kamon Order on Motion to Appear Pro Hac
Vice
Content–Type: text/html
```

### U.S. District Court

### District of Maryland

## Notice of Electronic Filing


The following transaction was entered on 11/9/2022 at 1:17 PM EST and filed on 11/9/2022

**Case Name:**      USA v. Kamon

**Case Number:**      <u>1:22–mj–03247–MJM</u>

**Filer:**

**Document Number:**  9(No document attached)

**Docket Text:**
 **ORDER granting [8] Motion to Appear Pro Hac Vice on behalf of Jessie K. Liu. Directing attorney Jessie K. Liu to register for pro hac vice filing in the District of Maryland through PACER at https://pacer.uscourts.gov/ if attorney has not already done so. The *Pro Hac Vice* option must be selected when registering as to Christopher K Kamon (1). Signed by Clerk on 11/9/2022. (mh4s, Deputy Clerk)**


**1:22–mj–03247–MJM–1 Notice has been electronically mailed to:**

Donald Paul Salzman     donald.salzman@probonolaw.com, dlmlcwas@skadden.com

Jessie K. Liu     jessie.liu@skadden.com

**1:22–mj–03247–MJM–1 Notice will not be electronically delivered to:**

```
MIME-Version:1.0
From:MDD_CM-ECF_Filing@mdd.uscourts.gov
To:MDDdb_ECF@mdd.uscourts.gov
Bcc:
--Case Participants: Jessie K. Liu (jessie.liu@skadden.com), Donald Paul Salzman
(dlmlcwas@skadden.com, donald.salzman@probonolaw.com), Magistrate Judge Matthew James
Maddox (mdd_mjmchambers@mdd.uscourts.gov)
--Non Case Participants: Probation Baltimore
(probbaltimore_clerks_office_docs@mdp.uscourts.gov), The Honorable Matthew J. Maddox
(mdd_mjmchambers@mdd.uscourts.gov), USAO VNS Notice (usamd.vw-ecf@usdoj.gov), USMS
Baltimore Ops (usms.baltimoreops@usdoj.gov)
--No Notice Sent:

Message-Id:11072107@mdd.uscourts.gov
Subject:Activity in Case 1:22-mj-03247-MJM USA v. Kamon Notice of Hearing by U.S.
Attorneys Office
Content-Type: text/html
```

**U.S. District Court**

**District of Maryland**

**Notice of Electronic Filing**

The following transaction was entered by McGuinn, Colleen on 11/10/2022 at 8:37 AM EST and filed on 11/10/2022

| | |
|---|---|
| **Case Name:** | USA v. Kamon |
| **Case Number:** | 1:22–mj–03247–MJM |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
 **PAPERLESS NOTICE OF HEARING by U.S. Attorney's Office as to Christopher K Kamon. PLEASE NOTE: Defendant is in custody. A writ has not been requested. A come up was requested on 11/10/2022. An interpreter will not be needed. Detention Hearing set for 11/10/2022 11:30 AM in Courtroom 7B, 101 West Lombard Street, Baltimore, Maryland 21201, before Magistrate Judge Matthew James Maddox.(McGuinn, Colleen)**

**1:22–mj–03247–MJM–1 Notice has been electronically mailed to:**

Donald Paul Salzman &nbsp &nbsp donald.salzman@probonolaw.com, dlmlcwas@skadden.com

Jessie K. Liu &nbsp &nbsp jessie.liu@skadden.com

**1:22–mj–03247–MJM–1 Notice will not be electronically delivered to:**

✓ FILED ___ ENTERED
___ LOGGED ___ RECEIVED

2:20 pm, Nov 10 2022
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

**UNITED STATES OF AMERICA**

            **vs.**

   **CHRISTOPHER K. KAMON**

    \*

    \*        **Case No.**   22-mj-3247-MJM

    \*

    \*

    ******

## ORDER OF DETENTION (18 U.S.C. § 3142)

In accordance with the Bail Reform Act, 18 U.S.C. § 3142(f), a detention hearing has been held. I have concluded that the following facts require the detention of the defendant pending the trial of this case.

### PART I: FINDINGS OF FACT

☒ (1) This is a case in which the [government may properly seek detention] or [the court may consider ordering detention sua sponte].

☒ (2) The defendant is charged under: *18 U.S.C. sec. 1343*

☒ (3) The maximum term of imprisonment, if convicted, is: *20 YEARS*

☒ (4) Based on the government's (**proffer**) [evidence] there is probable cause to believe that the defendant committed the offense(s) charged.

    ☐ The government is entitled to a presumption under § 3142 (e) [**describe in Part II**].

    ☐ The defendant has failed to rebut this presumption [as to flight risk] or [as to danger].

☒ (5) I find, by a preponderance of the evidence, from the information produced at the hearing that there is a serious risk that the defendant will not appear.

☐ (6) I find, by clear and convincing evidence, from the information produced at the hearing that the defendant poses a risk to the safety of other persons and the community.

☒ (7) I find by clear and convincing evidence that there is no condition or combination of conditions which will reasonably assure [the defendant's presence at trial or as otherwise required] [community safety].

### PART II: WRITTEN STATEMENT OF ADDITIONAL REASONS FOR DETENTION

*REASONS STATED ON THE RECORD AT THE HEARING*

The defendant is committed to the custody of the Attorney General or his/her designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the U.S. Marshal shall deliver the defendant for the purpose of an appearance in connection with a court proceeding.

November 10, 2022
Date

                     Matthew J. Maddox
                     United States Magistrate Judge

U.S. District Court (9/2009) Criminal Magistrate Forms: Order of Detention

AO 94  (Rev. 01/09, MD 6/09) Commitment to Another District

# UNITED STATES DISTRICT COURT
for the

District of Maryland

✓ FILED ___ ENTERED
____ LOGGED _____ RECEIVED

**2:20 pm, Nov 10 2022**

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy

|  |  |  |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. 22-mj-3247-MJM |
|  | ) | |
| CHRISTOPHER K. KAMON | ) | Charging District's |
| *Defendant* | ) | Case No.  Unknown |

## COMMITMENT TO ANOTHER DISTRICT

The defendant has been ordered to appear in the   Central   District of  California

The defendant may need an interpreter for this language:

The defendant: ☒  will retain an attorney.

☐  is requesting court-appointed counsel.

The defendant remains in custody after the initial appearance.

**IT IS ORDERED:** The United States marshal must transport the defendant, together with a copy of this order, to the charging district and deliver the defendant to the United States marshal for that district, or to another officer authorized to receive the defendant.  The marshal or officer in the charging district should immediately notify the United States attorney and the clerk of court for that district of the defendant's arrival so that further proceedings may be promptly scheduled.  The clerk of this district must promptly transmit the papers and any bail to the charging district.

Date:   November 10, 2022

_Judge's signature_

Matthew J. Maddox          , United States Magistrate Judge
_Printed name and title_